RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0117p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JASON KUTCHINSKI, as parent and next friend to H.K., a minor,

          *Plaintiff-Appellant*,

  *v.*

FREELAND COMMUNITY SCHOOL DISTRICT; MATTHEW A. CAIRY and TRACI L. SMITH, in their official and individual capacities,

          *Defendants-Appellees*.

No. 22-1748

---

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:19-cv-13810—Sean F. Cox, District Judge.

Argued: May 1, 2023

Decided and Filed: June 2, 2023

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Jacob G. Lyday, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees. **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, Matthew E. Gronda, GRONDA PLC, St. Charles, Michigan, for Appellant. Gregory W. Mair, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees.

## OPINION

MATHIS, Circuit Judge. H.K., a high-school student at Freeland Community School District, created a fake Instagram account impersonating one of his teachers. The account was benign at first, but soon became graphic, harassing, and threatening when two of his friends added their own posts to the account. News of the account spread fast, fueled by the students' own efforts. They accepted requests to follow the account and H.K.'s friends tagged teachers in their posts. H.K. eventually decided that the attention was too much and he deleted the account.

The school traced the account to H.K. and the other two students and imposed an immediate five-day suspension pending further investigation. After concluding the investigation and providing H.K. with an administrative hearing on the matter, the school suspended him for ten days.

H.K.'s father, Jason Kutchinski, then sued the school district, the principal, and the superintendent under 42 U.S.C. § 1983, claiming that the ten-day suspension violated H.K.'s free-speech and due-process rights. The district court denied Kutchinski's motion for partial summary judgment and granted summary judgment to Defendants. Because Defendants had the authority to regulate H.K.'s off-campus speech and because the rule Defendants relied on to discipline H.K. was sufficiently definite, we affirm.

I.

H.K. was at his home as Friday night bled into Saturday morning when he created a fake Instagram account to impersonate his biology teacher, Steven M. Schmidt. He wrote the account's first post—a photograph of a gas pump with a hypodermic needle embedded in it with the caption "[w]atch out guys, I am concerned for everyone's safety!" R. 51-3, PageID 1000; R. 51-16, PageID 1063. Later that night, while H.K. played online games with his two friends, K.L. and L.F., he told them about the account and shared the log-in information with them. According to H.K., K.L. or L.F. later added the following biography to the account:

Case: 22-1748    Document: 33-2    Filed: 06/02/2023    Page: 3

No. 22-1748          *Kutchinski v. Freeland Cmty. Sch. Dist.*          Page 3

> Steven Schmidt
> Biology teacher at Freeland High School
> 1 Loving Wife #lovers married in 2016
> Father of 2 beautiful twins #blessed and one 1 girl #growingup

R. 51-16, PageID 1063; R. 51-3, PageID 1001.

Soon after receiving the log-in information, K.L. and L.F. wrote several posts about Schmidt, English teacher Chelsea Howson, substitute teacher/football coach Trey Anderson, and an unnamed disabled student. The posts displayed:

- A photo of the disabled student with the caption "[g]lad this sicko is out of our school #ass[a]ult #Blessed"
- A photo of Schmidt and his wife and child with the caption "[j]ust #gangbanged my wife with 4 other men in the back of an Arby's #notmykid #14inches"
- A photo of Schmidt and his wife with the caption "[h]appy 3rd Anniversary to my beautiful wife! #loving #anniversary #STDs"
- A photo of Howson with the caption "[b]est sex in a Pet Smart #big #throbbing #14inches #raw"
- A graphic video with the caption "[m]ight have to cheat on my wife [two winking emojis] #big #14inches"
- A photo of Anderson with two unknown students with the caption "I will find and kill @_treyanderson__ [I'm] going to strangle him with my barehands [sic] until he is barely conscious, then let go. Once he is awake again [I'm] gonna run him over with my fucking car and crush [h]is skull into a million pieces. #lol @elite_edge"
- A photo of Anderson with his cat with the caption "I could beat up @_treyanderson__ and anyone else in @elite_edge and then curb stomp his cat. #gains @peta"

R. 51-3, PageID 997–1005.

K.L. and L.F. tagged Howson and Anderson in the posts referencing them. K.L. told H.K. about the posts that he had made to the account, and H.K. monitored the account and viewed the posts himself. H.K. did not delete them. Instead, he joked with K.L. and L.F. about the posts and the three accepted 18 requests to follow the account.

Case: 22-1748   Document: 33-2   Filed: 06/02/2023   Page: 4

No. 22-1748         *Kutchinski v. Freeland Cmty. Sch. Dist.*         Page 4

By Sunday, Schmidt and Howson learned about the account and contacted the school's principal, Traci L. Smith ("Principal Smith"), to let her know about the account's existence. Schmidt told Principal Smith:

> Someone has set up an account and is pretending to be me on Instagram. The posts they are making are highly inappropriate. I have attached screenshots of them as of 6:00am 5-12. I filed reports for impersonation, threats of violence, and harrassment [sic] on Instagram as well. If there is anything else I need to do, please let me know.

R. 51-2, PageID 996.

The account remained active when school commenced on Monday morning. By this time, Schmidt's and Howson's students had learned about the account. According to Howson, "students were whispering about the incident, mainly in the afternoon after it had . . . spread around." R. 49-3, PageID 924. This made her feel "incredibly humiliated the entire day" because she "knew that students knew about it . . . [and she] was humiliated to even bring the topic up." *Id.* at 926. A student reported to another teacher that Howson was crying in one of her classes.

H.K. grew concerned that the account was getting out of control. He deleted the account during his lunch period after several friends urged him to do so.

Principal Smith investigated the account's origins throughout the day. She spoke with teachers, who told her about several "classroom disruptions going on in their rooms," and called "multiple students out of the classroom," one of whom identified H.K., K.L., and L.F. as the students involved with the account. R. 49-1, PageID 894, 897.

Principal Smith put H.K. on an immediate five-day suspension. According to the notice letter sent to H.K.'s parents, the basis of his suspension was "impersonating a staff member by creating a fake on line [sic] account, posting to it, and sharing online log in [sic] information with others who posted additional inappropriate material." R. 51-6, PageID 1010. The letter also notified H.K.'s parents that further investigation could result in additional punishment. And that is exactly what happened.

On May 30, 2019, Freeland's superintendent, Matthew A. Cairy ("Superintendent Cairy"), notified H.K.'s parents that Principal Smith had recommended H.K.'s expulsion and that Freeland would conduct a disciplinary hearing.

H.K., his parents, his legal counsel, Principal Smith, and Superintendent Cairy attended the hearing. On August 6, 2019, Superintendent Cairy notified H.K. that he would receive a ten-day suspension "for his actions on May 11–13, 2019, including: gross misbehavior for his posting a fake Instagram account impersonating a teacher (under an assumed name), posting to that account as the teacher, and sharing the username and password with other students." R. 51-15, PageID 1053.

Kutchinski sued Defendants on H.K.'s behalf, alleging that H.K.'s ten-day suspension violated his First Amendment and Fourteenth Amendment rights.[1] The case proceeded to discovery, after which the parties filed competing motions for summary judgment. The district court ultimately granted Defendants' summary judgment motion and denied Kutchinski's summary judgment motion.

## II.

We review the grant of summary judgment de novo. *See Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In reviewing the motion, we view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022).

## III.

This appeal involves two questions. First, whether Defendants could punish H.K. for his involvement with the Instagram account. And second, whether one of the school rules that Defendants relied on to suspend H.K. was unconstitutionally vague. The First Amendment's

---

[1] Kutchinski sued Superintendent Cairy and Principal Smith in both their official and individual capacities.

Case: 22-1748     Document: 33-2     Filed: 06/02/2023     Page: 6

No. 22-1748          *Kutchinski v. Freeland Cmty. Sch. Dist.*          Page 6

Free Speech Clause controls the first question. The Fourteenth Amendment's Due Process Clause controls the second. We address each question in turn.

### A.

Applicable to the States through the Fourteenth Amendment, the First Amendment prohibits the government from "abridging the freedom of speech." U.S. CONST. amend. I; *Grosjean v. Am. Press Co.*, 297 U.S. 233, 243 (1936). Specifically, the Free Speech Clause protects "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Though broadly phrased, the freedom of speech is not unlimited. For example, "[e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). The schoolhouse is one such restriction. Although students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), their First Amendment rights "are not automatically coextensive with the rights of adults in other settings," *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). As such, students' free-speech rights apply "in light of the special characteristics of the school environment." *Tinker*, 393 U.S. at 506.

The Supreme Court has outlined four categories of student speech that schools may regulate: (1) indecent, offensively lewd, or vulgar speech uttered during a school assembly on school grounds, *see Fraser*, 478 U.S. at 683–85; (2) speech during school or at a school-sponsored event that schools "reasonably regard as promoting illegal drug use," *see Morse v. Frederick*, 551 U.S. 393, 408 (2007); (3) "speech in school-sponsored expressive activities" if the schools' "actions are reasonably related to legitimate pedagogical concerns," *see Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988); and (4) on-campus and some off-campus speech that "materially disrupts classwork or involves substantial disorder or invasions of the rights of others," *see Tinker*, 393 U.S. at 513; *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038, 2045 (2021). Because this case involves off-campus speech, it implicates the fourth category.

Case: 22-1748     Document: 33-2     Filed: 06/02/2023     Page: 7

No. 22-1748     *Kutchinski v. Freeland Cmty. Sch. Dist.*     Page 7

*Mahanoy* guides our analysis. In *Mahanoy*, a high-school student who was passed over for her school's varsity cheerleading team reacted by posting on Snapchat with a caption that contained "vulgar language and gestures criticizing both the school and the school's cheerleading team." *Id*. at 2042–43. The student made the post over the weekend while she was not at school. *Id.* at 2043. The school later discovered the post and suspended her from the junior varsity cheerleading squad. *See id.* The Court found that the suspension violated the student's free-speech rights. *See id.*

Although a "school's regulatory interests remain significant in some off-campus circumstances," such as "serious or severe bullying or harassment targeting particular individuals [or] threats aimed at teachers or other students," schools do not have the same authority to regulate off-campus speech as they do on-campus speech. *Id.* at 2045. *Mahanoy* identified three features of off-campus speech that "diminish the strength of the unique educational characteristics that might call for special First Amendment leeway." *Id.* at 2046.

First, for off-campus speech, the school rarely stands *in loco parentis*. *Id.* "The doctrine of *in loco parentis* treats school administrators as standing in the place of students' parents under circumstances where the children's actual parents cannot protect, guide, and discipline them." *Id.* Thus, "off-campus speech will normally fall within the zone of parental, rather than school-related, responsibility." *Id.* Second, off-campus regulations, coupled with on-campus regulations, cover "all the speech a student utters during the full 24-hour day." *Id.* "That means courts must be more skeptical of a school's efforts to regulate off-campus speech, for doing so may mean the student cannot engage in that kind of speech at all." *Id.* Third, "the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus." *Id.* American democracy works only if we protect the "marketplace of ideas." *Id.* "That protection must include the protection of unpopular ideas, for popular ideas have less need for protection." *Id.* "[T]hese three features of much off-campus speech mean that the leeway the First Amendment grants to schools in light of their special characteristics is diminished." *Id.*

As Justice Alito's concurrence points out, we can view a school's ability to regulate off-campus speech on a spectrum. At one end of the spectrum, schools can probably regulate

Case: 22-1748     Document: 33-2     Filed: 06/02/2023     Page: 8

No. 22-1748         *Kutchinski v. Freeland Cmty. Sch. Dist.*         Page 8

"speech that takes place during or as part of what amounts to a temporal or spatial extension of the regular school program, *e.g.*, online instruction at home, assigned essays or other homework, and transportation to and from school." *Id.* at 2054 (Alito, J., concurring). At the other end of the spectrum, schools generally cannot regulate "speech that is not expressly and specifically directed at the school, school administrators, teachers, or fellow students and that addresses matters of public concern[.]" *Id.* at 2055 (Alito, J., concurring). The middle of the spectrum includes "speech that criticizes or derides school administrators, teachers, or other staff members" or "involves criticism or hurtful remarks about other students." *Id.* at 2057 (Alito, J., concurring).

The student speech at issue here involves serious or severe harassment of three teachers and a Freeland student. *See id.* at 2045 (majority opinion). Therefore, Defendants could regulate the speech and discipline H.K. so long as he bore some responsibility for the speech and the speech substantially disrupted classwork (or Defendants reasonably believed the speech would disrupt classwork). *See id.* at 2052 (Alito, J., concurring) ("[A] school must have the authority to protect everyone on its premises, and therefore schools must be able to prohibit threatening and harassing speech.").

**1.**

*Whether H.K. was responsible for the subject speech.* To recap, H.K. created an Instagram account mimicking Schmidt and made one innocuous post on the account. Hours after creating the account, H.K. provided the account's log-in information to K.L. and L.F. so that they could post on the account. K.L. and L.F. made the incendiary posts and, in fact, K.L. told H.K. when K.L. was posting on the account. H.K. joked with K.L. and L.F. about their posts and accepted requests to follow the account.

We have not had the occasion to address when one student can be held responsible for the speech of others, but some of our sister circuits have. In *Doe v. Hopkinton Public Schools*, after a high school disciplined eight students on a hockey team for bullying one of their teammates, two of the students sued, arguing that the discipline violated their free-speech rights because they were not active participants in the bullying. 19 F.4th 493, 498, 507 (1st Cir. 2021). The *Doe*

Case: 22-1748    Document: 33-2    Filed: 06/02/2023    Page: 9

No. 22-1748         *Kutchinski v. Freeland Cmty. Sch. Dist.*         Page 9

court found that the two students' derogatory comments in a Snapchat group conversation about the bullied student "were causally connected to the direct bullying because they encouraged other group members to continue" the bullying. *Id.* at 505–07. As the *Doe* court aptly observed: "Children often bully as a group. The children who stand up on the sidewalk and cheer as one of their friends shakes down a smaller student for his lunch money may not be as culpable, but they are not entirely blameless." *Id.* at 507 (citation omitted).

Similarly, in *Chen ex rel. Chen v. Albany Unified School District*, a student sued after a high school disciplined the student for "liking" and commenting on Instagram posts about other students that were highly insulting or racist. 56 F.4th 708, 711–12 (9th Cir. 2022). Because the student "egg[ed] on a bully who torment[ed] classmates," the *Chen* court found that the student was an "affirmative participa[nt] in what ended up . . . as abusive harassment targeted at particular students." *Id.* at 723; *see also Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565, 567, 572–74 (4th Cir. 2011) (upholding the suspension of a student who created a MySpace page to bully another student and subsequently commented on friends' posts which made derogatory comments about the student).

Like the First, Fourth, and Ninth Circuits, we hold that when a student causes, contributes to, or affirmatively participates in harmful speech, the student bears responsibility for the harmful speech. And because H.K. contributed to the harmful speech by creating the Instagram account, granting K.L. and L.F. access to the account, joking with K.L. and L.F. about their posts, and accepting followers, he bears responsibility for the speech related to the Instagram account.

Kutchinski disagrees and makes two arguments. First, Kutchinski argues that Section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars Defendants from disciplining H.K. for the posts made by K.L. and L.F. This is incorrect. Under § 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." To the extent § 230 applies, we do not treat H.K. as the "publisher or speaker" of the posts made by K.L. and L.F. Instead, we have found that H.K. contributed to the harmful speech through his own actions.

Case: 22-1748     Document: 33-2     Filed: 06/02/2023     Page: 10

No. 22-1748        *Kutchinski v. Freeland Cmty. Sch. Dist.*        Page 10

Second, Kutchinski argues that disciplining H.K. for the posts emanating from the Instagram account violates H.K.'s First Amendment freedom-of-association rights. "The First Amendment . . . restricts the ability of the State to impose liability on an individual solely because of his association with another." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918–19 (1982). "The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Id.* at 908. But Defendants did not discipline H.K. because he associated with K.L. and L.F. They determined that H.K. jointly participated in the wrongful behavior. Thus, Defendants did not impinge on H.K.'s freedom-of-association rights.

**2.**

*Substantial disruption.* Having determined that H.K. bears responsibility for the harmful speech, we next consider whether the subject speech caused, or had the potential to cause, substantial disruption at Freeland. Substantial disruption is a "demanding standard." *Mahanoy*, 141 S. Ct. at 2047–48. To justify barring speech, a school must "show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. "[U]ndifferentiated fear or apprehension . . . is not enough to overcome the right to freedom of expression." *Id.* at 508.

That said, "*Tinker* does not require disruption to have actually occurred." *Lowery v. Euverard*, 497 F.3d 584, 593 (6th Cir. 2007). "Nor does *Tinker* 'require certainty that disruption will occur.'" *Id.* at 592 (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 767 n.17 (9th Cir. 2006)). Instead, we must decide whether Defendants reasonably forecast that the posts from the Instagram account "would cause material and substantial disruption to schoolwork and school discipline." *See Barr v. Lafon*, 538 F.3d 554, 565 (6th Cir. 2008). "The rationale for this standard lies in the fact that requiring evidence of disruption caused by the banned speech would place 'school officials . . . between the proverbial rock and hard place: either they allow disruption to occur, or they are guilty of a constitutional violation.'" *Id.* (quoting *Lowery*, 497 F.3d at 596) (alteration in original).

Case: 22-1748    Document: 33-2    Filed: 06/02/2023    Page: 11

No. 22-1748         *Kutchinski v. Freeland Cmty. Sch. Dist.*         Page 11

Defendants reasonably forecasted that a fake Instagram account that impersonated a Freeland teacher and directed sexual and violent posts at three Freeland teachers and a student would substantially disrupt normal school proceedings. When school resumed after the weekend, Principal Smith tried to get out ahead of the anticipated disruptions by investigating the account's origins throughout the school day. And, in fact, one could reasonably argue that actual disruption occurred. A student saw one of the targeted teachers crying in one of her classes. Students whispered about the posts during the day with each other. Multiple teachers reported disruptions in their classes. *See Mahanoy*, 141 S. Ct. at 2052–53 (Alito, J., concurring) ("An effective instructional atmosphere could not be maintained in a school, and good teachers would be hard to recruit and retain, if students were free to abuse or disrespect them.").

Interestingly, Kutchinski suggests that Principal Smith's investigation of the Instagram account during the school day caused the disruption. But because Principal Smith reasonably believed that disruption would take place, she was permitted to take steps to thwart the disruption. *See Barr*, 538 F.3d at 565.

"[S]chool officials need a degree of flexible authority to respond to disciplinary challenges." *Morse*, 551 U.S. at 428 (Breyer, J. concurring in the judgment in part and dissenting in part). Courts thus provide educators a high degree of deference in the exercise of their professional judgment lest they "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *see Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009).

Defendants did not violate H.K.'s free-speech rights by disciplining him. The district court properly granted summary judgment to Defendants on Kutchinski's First Amendment claim.

## B.

Kutchinski also asserts that even if H.K.'s suspension did not violate H.K.'s free-speech rights, the suspension was still improper because Defendants relied on an unconstitutionally vague rule in the Freeland Middle/High School Student Handbook as the basis for the

Case: 22-1748    Document: 33-2    Filed: 06/02/2023    Page: 12

No. 22-1748            *Kutchinski v. Freeland Cmty. Sch. Dist.*            Page 12

suspension. The Fourteenth Amendment prohibits the States from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). But "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985). "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Fraser*, 478 U.S. at 686.

A school's policy is unconstitutionally vague "when it either (1) fails to inform ordinary people what conduct is prohibited, or (2) allows for arbitrary and discriminatory enforcement." *Meriwether v. Hartop*, 992 F.3d 492, 517–18 (6th Cir. 2021) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). The analysis depends on the context. For example, "[t]here is substantially more room for imprecision in regulations bearing only civil, or employment, consequences, than would be tolerated in a criminal code." *Id.* at 518 (citation and quotation marks omitted). Moreover, "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010)).

Kutchinski challenges Rule 10 of the Handbook, which states that "[s]tudents guilty of gross misbehavior, persistent disobedience or having habits detrimental to the school will be suspended or excluded from [the school]." R. 51-17, PageID 1082. According to Kutchinski, Rule 10 is unconstitutionally vague because a prohibition on "gross misbehavior fails to give students of ordinary intelligence the reasonable opportunity to know what is prohibited."

The Oxford English Dictionary defines misbehavior as "improper conduct." *Misbehavior*, OXFORD ENGLISH DICTIONARY (3d ed. 2022). The same dictionary defines gross as "flagrant" and "[g]laring." *Gross*, OXFORD ENGLISH DICTIONARY (3d ed. 2022). Thus, a

Case: 22-1748    Document: 33-2    Filed: 06/02/2023    Page: 13

No. 22-1748    *Kutchinski v. Freeland Cmty. Sch. Dist.*    Page 13

student engages in gross misbehavior when his actions constitute flagrant or glaring improper conduct. The conduct at issue fits the bill.

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing [school policies.]" *Colten v. Kentucky*, 407 U.S. 104, 110 (1972); *see Green Party of Tenn. v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012). There is certainly some imprecision or subjectivity as to what constitutes "gross misbehavior." But schools are not held to the utmost specificity in drafting their disciplinary rules. *See Fraser*, 478 U.S. at 686 (finding that a school rule barring "obscene" language did not violate a student's due-process rights); *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (noting that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity"). More imprecise or subjective prohibitions have survived our review. *See Fowler v. Bd. of Educ. of Lincoln Cnty.*, 819 F.2d 657, 665–66 (6th Cir. 1987) (finding a statute proscribing "conduct unbecoming a teacher" was not unconstitutionally vague). Given this latitude, Rule 10 is not unconstitutionally vague and the district court did not err in granting Defendants' motion for summary judgment and denying Kutchinski's motion for partial summary judgment on the due-process claim.

## IV.

For the aforementioned reasons, we **AFFIRM** the district court's judgment.